IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PATRICK SEAN BUTLER,
    Plaintiff,

v.

MIROSLAV DJINDJIEV, et al.,
    Defendants.

CIVIL ACTION NO. 19-CV-6131

FILED
JAN 23 2020
KATE BARKMAN, Clerk
By_____ Dep. Clerk

## MEMORANDUM

SÁNCHEZ, C.J.                                                                                                                                              JANUARY 23, 2020

    Plaintiff Patrick Sean Butler, a prisoner currently incarcerated at the Lehigh County Jail ("LCJ"), has brought a Complaint pursuant to 42 U.S.C. § 1983, raising claims based on a criminal prosecution against him and the conditions at LCJ. Butler seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Butler leave to proceed *in forma pauperis* and dismiss his Complaint without prejudice to amendment. The Court will also deny Butler's letter request for preliminary injunctive relief.

### I.    FACTUAL ALLEGATIONS[1]

    Public records reflect that on October 14, 2019, Butler was charged with use or possession of drug paraphernalia, recklessly endangering another person, false imprisonment, and disorderly conduct. *See Commonwealth v. Butler*, CP-39-CR-288-2020 (Lehigh Cty. C.C.P.); *Commonwealth v. Butler*, CP-39-MD-2793-2019 (Lehigh Cty.). The docket for preliminary proceedings before the magisterial district judge reflects that Butler filed a "petition for subpoena witnesses and documents," which was denied, and a "motion for transcripts," which was not

---

[1] The following allegations are taken from the Complaint and from public dockets of which the Court takes judicial notice. *See Buck v. Hampton Twp.*, 452 F.3d 256, 260 (3d Cir. 2006).

ruled upon according to the docket. *Commonwealth v. Butler*, CP-39-MD-2793-2019 (Leigh Cty. C.C.P.). The docket also reflects that the court granted a motion to quash Butler's subpoenas. *Id.* On January 17, 2020, the case was transferred from magisterial district court to the Lehigh County Court of Common Pleas, where it remains pending. *See Commonwealth v. Butler*, CP-39-CR-288-2020.

These proceedings appear to be the impetus for Butler's Complaint in the instant civil action. Butler alleges that on the date of the incident that led to his arrest, Defendants Deena Ziemba and Dillon Koch "conspired to have [him] murdered." (Compl. ECF No. 2 at 5.)[2] He contends that Ziemba and Koch also stole from him, hacked him, prevented his phone from calling 911, and stole his car. (*Id.* at 16.) Butler claims that he reported Ziemba and Koch's conduct to the police; the underlying suggestion throughout the Complaint is that the police instead improperly treated him as the assailant when it was Ziemba and Koch who were trying to kill him, although this is not entirely clear.

Butler alleges that Pennsylvania State Police Troopers Miroslav Djindjiev and Michael Hodgskin are attempting to cover up the plot against Butler "by destroying evidence, creating an affidavit of false statements and reckless omissions," and conspiring with the District Attorney, Public Defender's office (which has been appointed to represent Butler), and LCJ. (*Id.* at 5 & 16.) It appears Butler sought to subpoena witnesses for hearings in his criminal case to prove that others are attempting to murder him and that he has been framed. In that regard, Butler refers to court proceedings on October 21, 2019 and November 14, 2019 and alleges that he wanted to cross-examine Trooper Djindjiev but was unable to do so. (*Id.* at 16.)

---

[2] The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

2

Thereafter, Butler sought to subpoena Djindjiev. (*Id.*) He wrote to third parties about his concerns but did not receive a response. (*Id.*) He alleges that the jail "purposely thwarted his efforts" to subpoena witnesses on his behalf; this allegation may refer to Butler's dissatisfaction with the law library at LCJ. (*Id.*) Butler also alleges that he wrote letters to the public defender's office and indicates that he asked LCJ Case Manager Josh Leadbetter to "use the phone to call the office" but Leadbetter stated "'Your [sic] not getting a phone call' and proceeded to give [Butler] a 24 hour detention." (*Id.* at 16-17.)

It appears Butler was in disciplinary segregation at some point. He states that the "24 hr detention for trying to get a phone call to Attorney and the 10 day R/S status have the exact same charges listed." (*Id.* at 20.) Butler does not clarify the nature of those charges, but contends they are evidence of the conspiracy against him. (*Id.*) He was told he could not have access to a "tangible law book." (*Id.* at 18.) He also alleges that he only has access to three envelopes per week. (*Id.*) Butler also avers that two correctional officers, apparently Defendants Romanski and Mujeivc, "personally prevented [him] from going to Jumu'ah." (*Id.*) Butler was told he would have to "fill out a form" and wait to be placed on a list to attend Jumu'ah, but then was told he was placed on the wrong list. (*Id.* at 18-19.) He also claims that "LCJ officials have also attempted to force [him] to speak to mental health over 8-10 times and have threatened [him] with misconducts if [he does] not comply, in violation of HIPPA [sic]," apparently a reference to the Health Insurance Portability and Accountability Act of 1996. (*Id.* at 20.)

Turning back to the criminal proceeding, Butler discussed with an unidentified public defender who first was appointed to represent him that he "had tangible material evidence that proves [he] was set up to be killed and the PSP covered it up." (*Id.* at 8 & 17.) Defense counsel responded he was "a lawyer, not a cop." (*Id.*) Defendant Richard Webster, a second attorney appointed to represent Butler at a December 12, 2019 hearing, told Butler that he was paranoid

3

and should plead guilty. (*Id.*) Webster also made representations at the hearing with which Butler appears to disagree. (*Id.* at 17.)

Butler alleges that Defendant Djindjiev "failed to appear" at the hearing on December 12, and avers that he raised this issue with the Magisterial District Judge, who "remained quiet." (*Id.* at 16.) Butler also demanded transcripts and copies of transcripts, informed the judge that Defendant Ziemba visited him at LCJ, and also informed the judge that he was put in "the hole" on one of the days he went to court. (*Id.* at 17-18.) The docket for Butler's criminal proceeding indicates that the judge denied Butler's "Petition for Subpoena Witnesses and Documents" on December 16, 2019, and later granted a motion to quash Butler's subpoenas. *See Commonwealth v. Butler*, CP-39-MD-2793-2019 (Lehigh Cty.).

Butler's Complaint names numerous Defendants, specifically: (1) Trooper Djindjiev; (2) Trooper Hodgskin; (3) Ziemba (identified as a Dental Lab Technician with Aspen Dental);[3] (4) Koch (identified as a "Homemaker, Warehouse"); (5) Richard Webster (identified as a public defender); (6) Doug Mette (identified as "Treatment Supervisor"); (7) "The Attorney from Public Defenders Office who represented [Butler] on November 14, 2019"; (8) "The Front Desk Employee of the Knights Inn Hotel located at 1880 Steel Stone Road Hanover Township who worked October 13th-14th (3rd Shift)";[4] (9) Josh Leadbetter (identified as "Case Manager"); (10) Cliff Knappenberger (identified as being associated with "Internal Affairs"); (11) Lt. Loane (identified as "Lt. who unjustly tampered with evidence"); (12) "The Mail Room Officer at LCJ"; (13) Lt. Dugan (identified as "Lt. who signed off on fraudulent misconduct"); (14) Mike Salter (identified as being involved with "religious accommodations"); (15) Kyle A. Russell

---

[3] Misspelled as "Ziemnba" on the docket.

[4] The Clerk's Office incorrectly docketed this Defendant as two Defendants.

4

(identified as Warden of LCJ); (16) Tracy Kjester (identified as "Case Manager"); (17) C.O. Romanski (the Complaint indicates he is being sued "only for religious claim"); (18) C.O. Mujeivc (same); (19) Janine Donate (identified as "Director"); (20) Amanda Benner (identified as "Health Administrator"); and (21) "Primecare Medical Mental Health Therapists LCJ." (*Id.* at 2-3 & 12.) All Defendants are sued in their official and individual capacities, except for Ziemba and Koch who are sued only in their individual capacities. Butler seeks $20 million in damages, for Koch and Ziemba to go to jail, and for Djindjiev and Hodgskin to lose their badges.[5] (*Id.* at 5.)

Shortly after submitting his Complaint, Butler filed a letter requesting a temporary restraining order and/or permanent injunction. (ECF No. 4.) He alleges that LCJ officials "have been blocking preparation and filing of motion, refusal to mail legal papers, taken away research materials, and denied access to law books in effort to stop the Public and the Courts from learning that Pennsylvania State Trooper Mirolav [sic] Djindjiev, among others, are desperately trying to cover up an attempted murder, grand theft auto, identity theft, among other crimes against [him]." (*Id.* at 2.) He also alleges that his "assigned Public Defender" is preventing him from subpoenaing witnesses to prove his defense. (*Id.*) Butler also alleges that he is being "systematically bullied" at LCJ and "harassed" by the mental health department. (*Id.*) In this letter, Butler refers to a misconduct hearing on December 12 and claims that Lt. Loane made

---

[5] To the extent Butler seeks relief in the form of the initiation of criminal charges or the imprisonment of any or all the Defendants, this request for relief is dismissed as legally baseless. *See Godfrey v. Pennsylvania*, 525 F. App' x 78, 80 n.1 (3d Cir. 2013) (per curiam) ("[T]here is no federal right to require the government to initiate criminal proceedings." (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973))); *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 636 (E.D. Pa. 2014) ("[F]ederal courts lack the power to direct the filing of criminal charges."), *aff'd*, 572 F. App'x 68 (3d Cir. 2014) (per curiam). Furthermore, to the extent Butler intended to raise claims under criminal statutes, his claims fail, as criminal statutes rarely provide a basis for civil liability. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone.").

5

false accusations against him. (*Id.* at 2-3.) Butler asks to be transferred to the Northampton County Jail "until [his] criminal charges are dismissed." (*Id.* at 4.) He also seeks a "protective order on [his] property" which allegedly proves his defense in his criminal case, as well as assorted relief that appears to pertain to his criminal case. (*Id.*)

Butler also filed a document titled "Supplemental Brief/Pleading/Attached Exhibits in Support of Plaintiff [sic] Claims." (ECF No. 6.) The filing includes letters Butler wrote to Defendants in this case and third parties about the alleged conspiracy against him. Included in the exhibits is the December 16, 2019 order issued in Butler's criminal case dismissing his petition to subpoena witnesses and documents, which notes he is represented by counsel. (*Id.* at 5.)

## II. STANDARD OF REVIEW

The Court will grant Butler leave to proceed *in forma pauperis* because it appears that he is incapable of prepaying the fees to commence this civil action.[6] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it frivolous or fails to state a claim. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and factually baseless "when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

To state a claim, a pleading must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory statements and naked assertions will not suffice. *Id.* As noted,

---

[6] However, as Butler is a prisoner, he will be obligated to pay the filing fee in installments pursuant to 28 U.S.C. § 1915(b).

6

the Court may also take judicial notice of matters of public record, including dockets issued in Butler's criminal case. *See Buck*, 452 F.3d at 260. As Butler is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

Moreover, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8. *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019). To conform to Rule 8, a pleading must contain a short and plain statement showing that the plaintiff is entitled to relief. *See Travaline v. U.S. Supreme Court*, 424 F. App'x 78, 79 (3d Cir. 2011). The Third Circuit recently explained that in determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). A pleading may still satisfy the "plain" statement requirement "even if it is vague, repetitious, or contains extraneous information" and "even if it does not include every name, date, and location of the incidents at issue." *Id.* at 93-94. The important consideration for the Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

However, "a pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.* at 93; *see also Fabian v. St. Mary's Med. Ctr.*, Civ. A. No. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) ("Federal Rule of Civil Procedure 8 requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue.") (quotations omitted). Dismissals under Rule 8 are "'reserved for those cases in which the complaint so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Garrett*, 938 F.3d at 94 (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

7

## III. DISCUSSION

The Court understands Butler to be raising claims pursuant to 42 U.S.C. § 1983 based on matters related to his prosecution and based on the conditions of his confinement at LCJ. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). For the following reasons, Butler's claims fail.

### A. Failure to Comply with Rule 8

The manner in which the Complaint is pled makes it difficult to understand. Many of Butler's allegations are disjointed or disconnected, such that it is difficult to clearly understand what happened, when it happened, and who was involved. Butler raises many claims against numerous Defendants and does not clearly connect the named Defendants to the allegations against them. These pleading deficiencies make it challenging to screen the Complaint and would make it difficult for a Defendant to meaningfully respond to the pleading. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (pleading that relied on "repeated and collective use of the word 'Defendants'" was ambiguous about each Defendant's role in the events giving rise to plaintiff's claims). Nevertheless, the Court has done its best to understand the basis for Butler's allegations in an effort to address his claims, as noted further below.

8

There are, however, several Defendants against whom Butler makes no clear or meaningful allegations, specifically: (1) Doug Mette; (2) "The Front Desk Employee of the Knights Inn Hotel located at 1880 Steel Stone Road Hanover Township who worked October 13th-14th (3rd Shift)"; (3) Cliff Knappenberger; (4) Lt. Loane; (5) "The Mail Room Officer at LCJ"; (6) Lt. Dugan; (7) Mike Salter; (8) Kyle A. Russell; (9) Tracy Kjester; (10) Janine Donate; (11) Amanda Benner; and (12) "Primecare Medical Mental Health Therapists LCJ." Rather than guess at the basis for Butler's claims against these Defendants, which would be improper, the Court will dismiss Butler's claims against them without prejudice because they are not plausibly pled.

### B. Conspiracy Claims and Allegations

The Court understands Butler to be claiming that Troopers Djindjiev and Hodgskin are conspiring with Ziemba, Koch, prosecutors, public defenders, and possibly others to cover up a plot to murder him and, perhaps, to pursue an improper prosecution against him. "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Here, Butler alleges a vast conspiracy among various actors, but has not pled any facts supporting his general allegations. His assertions border on frivolousness but, even if they do not rise to the level of delusional, they are wholly unsupported by the factual allegations of the Complaint. In sum, Butler has not pled a plausible conspiracy and any claims based on the alleged conspiracy will be dismissed.

### C. Claims Against Ziemba and Koch

Ziemba and Koch are alleged to have conspired to murder Butler and to commit various other crimes against him. As Ziemba is identified as a Dental Lab Technician with Aspen Dental

9

and Koch is identified as a "Homemaker, Warehouse," these individuals do not appear to be state actors subject to liability under § 1983. Although "[a] private party 'who corruptly conspire[s]' with a state official will be considered a state actor under § 1983," in order to state a claim, a plaintiff "'must assert facts from which a conspiratorial agreement can be inferred.'" *See Kitko v. Young*, 575 F. App'x 21, 26 (3d Cir. 2014) (quoting *Great W. Mining*, 615 F.3d at 175-76 & 178)). Butler has not done so for the reasons discussed above. Even if Ziemba and Koch reported Butler to the police or cooperated with the police in connection with the criminal proceeding against Butler, that conduct does not convert them into state actors for purposes of § 1983. *See Simmer v. Kehler*, Civ. A. No. 15-2285, 2015 WL 6737017, at *3 (D.N.J. Nov. 2, 2015) (observing that "[m]erely giving information to police officers is insufficient to convert a private party into a state actor" even if the information is false) (collecting cases); *Cvetko v. Derry Twp. Police Dep't*, Civ. A. No. 09-1260, 2010 WL 1791140, at *4 (M.D. Pa. May 4, 2010) ("[A] private actor does not proceed under color of state law merely by furnishing the police with information pertaining to a possible public disturbance."); *Collins v. Christie*, Civ. A. No. 06-4702, 2007 WL 2407105, at *4 (E.D. Pa. Aug. 22, 2007) ("[E]ven if Dr. Columbo intentionally provided the false information to the police, the plaintiff would still fail to state a claim under § 1983."). Accordingly, the Court will dismiss Butler's claims against Ziemba and Koch because they are not state actors.

### D. Claims Against Public Defenders

Butler has named as Defendants two public defenders appointed to represent him in his criminal case, Richard Webster and an unidentified attorney who represented him at a hearing on November 14, 2019. These Defendants, however, are not state actors. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.")

10

(footnote omitted); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."); *see also Kitko*, 575 F. App'x at 26 (a plaintiff must plausibly allege a conspiratorial agreement for a defendant to be considered a state actor based upon conspiracy). Furthermore, any deficiencies in their representation, if any, should be addressed in state court, as this court may not intervene in state criminal proceedings. *See Younger v. Harris*, 401 U.S. 37, 43-44 (1971); *Duran v. Weeks*, 399 F. App'x 756, 758-59 (3d Cir. 2010) (per curiam) ("Since Duran' s section 1983 action seeking to enjoin his criminal prosecution presents the classic case for *Younger* abstention, the District Court's dismissal of Duran's complaint on that basis was clearly appropriate.").

### E. Claims Against Djindjiev and Hodgskin

Butler's claims against Troopers Djindjiev and Hodgskin are based on their alleged participation in the conspiracy against him "by destroying evidence, creating an affidavit of false statements and reckless omissions" and forging legal documents.[7] (Compl. ECF No. 2 at 5 & 16.) As noted above, Butler has not alleged any basis for a conspiracy, so any conspiracy claims fail. It appears that Butler may be trying to raise a malicious prosecution claim related to the criminal proceedings initiated against him on October 14, 2019. A plaintiff asserting a malicious

---

[7] The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). The Commonwealth of Pennsylvania has expressly withheld consent and has not waived its Eleventh Amendment immunity. *See* 42 Pa. Cons. Stat. § 8521-22. Accordingly, the Court must dismiss Butler's damages claims against the Troopers in their official capacities because those are really claims against the Pennsylvania State Police. *See Atkin v. Johnson*, 432 F. App'x 47, 48 (3d Cir. 2011) (per curiam) ("The District Court correctly determined that the Eleventh Amendment bars claims for damages against the PSP, a state agency that did not waive its sovereign immunity.").

11

prosecution claim must establish that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *See McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009). Here, the proceeding has not yet terminated in Butler's favor. Furthermore, his allegations that the Troopers destroyed and/or falsified evidence are entirely conclusory. He does not identify the false statements or destroyed evidence or explain how the alleged falsehoods affected whether probable cause existed for his prosecution. Accordingly, Butler has not stated a basis for a plausible claim against Troopers Djindjiev and Hodgskin.[8]

### F. Claims Related to Conditions of Confinement

Butler's remaining claims concern his conditions of confinement. These allegations are often sparse, interwoven with allegations about Butler's criminal case, and are not clearly tied to individual Defendants.[9] The Court will address them in turn.

#### a. Denial of Access to the Courts

Butler primarily appears to be asserting that he has been denied access to the courts because, among other things, unidentified individuals at LCJ are interfering with his ability to subpoena witnesses in his criminal case or access law books. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198,

---

[8] It is possible, though unclear, that Butler intends to bring additional Fourth Amendment claims against these Defendants. If so, those claims are insufficiently pled and will not be discussed further.

[9] To the extent officials at LCJ are sued in their official capacities, Butler's claims against them fail. As noted above, "official capacity" claims are essentially claims against the employing entity. *See supra* n.7. However, Butler has failed to allege a municipal policy or custom that would support a basis for a claim against the employing county. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978).

12

205 (3d Cir. 2008). "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). In other words, a prisoner claiming he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013).

Here, Butler's pleading reflects that he is represented by counsel in his criminal case. Additionally, the public docket for his criminal case and his Complaint reveal that he was able to present his arguments to the presiding magisterial district judge regarding the subpoenas and other issues. Accordingly, it is not clear how any of the conduct alleged resulted in an actual injury sufficient to state a plausible claim for denial of access to the courts. Butler at points alleges that he was prevented from talking to his attorney, but other portions of his Complaint make clear that he spoke with court-appointed counsel on various occasions. Accordingly, without further factual development, including allegations about actual injury, these claims must be dismissed as implausible.

### b. Claims Based on Discipline

Butler's Complaint includes allegations related to a twenty-four hour detention and a ten-day stay in disciplinary segregation based on charges he does not identify. The letter Butler

13

submitted following his Complaint indicates that he received a hearing on the charges, but the details are unclear and, in any event, none of these events are discussed in his Complaint, which is the governing pleading where all of Butler's allegations must be stated. As the basis for any claims related to discipline are unclear, including against whom Butler brings these claims and what constitutional violations he alleges in connection with the discipline he received, the Court will dismiss them as implausible.

### c. Claims Based on Religion

Butler alleges that Defendants Correctional Officers Romanski and Mujeivc "personally prevented [him] from going to Jumu'ah." (Compl. ECF No. 2 at 18.) The Supreme Court has recognized that the First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom.[10] *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *see also O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion.") (citations omitted). However, in order to state a plausible Free Exercise claim, a plaintiff must allege a "substantial burden" on the exercise. *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981); *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972).

Moreover, although inmates retain certain protections afforded by the First Amendment, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone*, 482 U.S. at 348 (quotations omitted). While the federal courts must take cognizance of valid constitutional claims of prison inmates, the Supreme Court repeatedly has cautioned that the task

---

[10] Although the Complaint alludes to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), Butler has not stated a basis for a RLUIPA claim here because money damages are not available under that statute and RLUIPA does not provide a basis for claims against the Defendants in their individual capacities. *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012).

14

of prison administration has been committed to the responsibility of the legislative and executive branches of government; federal courts should be reluctant to second guess these authorities. *See, e.g., Turner v. Safley*, 482 U.S. 78, 84 (1987); *O'Lone*, 482 U.S. at 353. The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden. *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989) (internal citations omitted).

Here, Butler's allegations are sparse. It is not clear how many services he allegedly missed and how the practice of his religion was substantially burdened by the conduct alleged. *See Jones v. Malin*, Civ. A. No. 15-5381, 2017 WL 985943, at *3 (S.D.N.Y. Mar. 13, 2017) ("As a matter of law, 'missing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion.'") (citing *Gill v. DeFrank*, Civ. A. No. 98-7851, 2000 WL 897152, at *1 (S.D.N.Y. July 6, 2000), *aff'd* 8 F. App'x 35 (2d Cir. 2001)); *cf. Alamiin v. Miller*, Civ. A. No. 08-1371, 2010 WL 3603150, at *21 (W.D. Okla Jun. 28, 2010) (concluding that two instances where Jumu'ah services were cancelled due to lockdown was not a substantial burden in RLUIPA context). Furthermore, it appears that all the two correctional officers are alleged to have done was report that Butler was on "the wrong list." (Compl. ECF No. 2 at 19.) Without further factual development, this claim fails.

### d. Claims Based on Mental Health Services

Butler alleges that he has been pressured to speak with individuals providing mental health services in violation of HIPAA. However, courts that have examined HIPAA have generally concluded that HIPAA does not create a private right of action for individual plaintiffs. *Johnson v. WPIC*, 782 F. App'x 169, 170-71 (3d Cir. 2019) (holding that HIPAA does not create a private right of action (citing *Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir. 2006))). To the

15

extent Butler is raising constitutional claims based on this issue, it is not clear who he is alleging violated his rights or how the conduct in question violated his rights. In sum, this undeveloped allegation does not state a plausible claim as pled.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Butler leave to proceed *in forma pauperis* and dismiss his Complaint.[11] As it is possible that Butler could amend his claims, he will be given leave to file an amended complaint.

The Court notes that, although Federal Rule of Civil Procedure 20 allows joinder of multiple defendants and claims involving common questions of law or fact, "this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *McKinney v. Prosecutor's Office*, Civ. A. No. 13-2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (internal quotations omitted). As Butler's Complaint is confusingly pled, the Court will not parse his allegations at this point. However, it appears he is joining several unrelated claims in one lawsuit such as, for example, claims related to his prosecution and the alleged denial of religious services. Accordingly, if he intends to pursue unrelated claims, he should file separate lawsuits. If Butler files an amended complaint that combines unrelated claims against unrelated defendants, the Court may sever those claims.

As to Butler's request for immediate relief, a party seeking the "extraordinary remedy" of a temporary restraining order or preliminary injunction must establish: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708

---

[11] To the extent Butler also intended to pursue claims under state law, he has not pled an independent basis for jurisdiction. *See* 28 U.S.C. § 1332(a).

16

(3d Cir. 2004); *Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012) ("The standard for granting a temporary restraining order under Federal Rule of Civil Procedure 65 is the same as that for issuing a preliminary injunction."). Here, Butler has not stated a plausible claim upon which he is likely to succeed. Accordingly, any request for preliminary injunctive relief is denied. An Order follows that provides further instruction as to amendment.

BY THE COURT:

/s/ Juan R. Sanchez

JUAN R. SANCHEZ, C.J.