# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICK SEAN BUTLER,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 19-CV-6131** |
| | : | |
| **MIROSLAV DJINDIEV,** *et al.*, | : | |
| Defendants. | : | |

## **MEMORANDUM**

SÁNCHEZ, C.J.                                                                  MARCH 19, 2020

      Currently before the Court is an Amended Complaint[1] filed by plaintiff Patrick Sean Butler, a prisoner currently incarcerated at the Lehigh County Jail, raising claims pursuant to 42 U.S.C. § 1983 arising from his prosecution and incarceration in Lehigh County. Butler's Amended Complaint names as Defendants three State Troopers — Miroslav Djindiev,[2] Michael Hodgskin,[3] and Trooper Griffin — and Jared Hanna, an Assistant District Attorney involved in prosecuting him. For the following reasons, the Court will dismiss the Amended Complaint and grant Butler leave to file a second amended complaint limited to certain claims.

---

[1] In a January 23, 2020 Memorandum and Order, the Court granted Butler leave to proceed *in forma pauperis* and dismissed his initial Complaint upon screening without prejudice to amendment. (ECF Nos. 9 & 10.) Butler thereafter filed his Amended Complaint in accordance with the Court's Order. (ECF No. 11.) An amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedes the prior pleading. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading." (internal citations omitted)).

[2] The Amended Complaint spells this Defendant's name as "Djindiev," "Djindjiev," and "Djinjiev." The Court will use the spelling provided in the caption.

[3] The Amended Complaint spells this Defendant's name as both "Hodgskin" and "Hodgeskin." The Court will use the spelling provided in the caption.

I.      **FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[4]

Public records reflect that on October 14, 2019, Butler was charged with use or possession of drug paraphernalia, recklessly endangering another person, false imprisonment, and disorderly conduct.  *See Commonwealth v. Butler*, CP-39-CR-288-2020 (Lehigh Cty. C.C.P.); *Commonwealth v. Butler*, MJ-31105-CR-466-2019 (Lehigh Cty.); *see also Commonwealth v. Butler*, CP-39-MD-2793-2019 (Leigh Cty. C.C.P.).  The docket for preliminary proceedings before a magisterial district judge reflects that, although Butler was appointed counsel, he filed a *pro se* "petition for subpoena witnesses and documents," which was denied, and a "motion for transcripts."  *Commonwealth v. Butler*, CP-39-MD-2793-2019 (Leigh Cty. C.C.P.).  The dockets reflect that the court granted a motion to quash Butler's subpoenas, *id.*, and that the motion for transcripts was ultimately denied.  *See Commonwealth v. Butler*, CP-39-CR-288-2020.  The case was transferred from magisterial district court to the Lehigh County Court of Common Pleas, where it remains pending.  *See Commonwealth v. Butler*, CP-39-CR-288-2020.

These criminal proceedings are the impetus for Butler's Amended Complaint in the instant civil action.  As with his initial Complaint, the Amended Complaint reflects Butler's belief that he was improperly treated as the assailant when, to the contrary, he was "set[] up" by his ex-girlfriend, who was allegedly trying to kill him.  (ECF No. 11 at 11.)[5]  Butler also claims that his car and bank account information were stolen.  (*Id.*)  It is unclear what took place, but the events in question appear to have occurred in a hotel room that Butler rented.  (*Id.*)

It appears Troopers Hodgskin and Trooper Griffin were first to arrive on the scene.  Butler alleges that, upon their arrival, he told the Troopers that he had "evidence to prove everything

---

[4] The following allegations are taken from the Amended Complaint and from public dockets of which the Court takes judicial notice.  *See Buck v. Hampton Twp.*, 452 F.3d 256, 260 (3d Cir. 2006).

[5] The Court adopts the pagination supplied by the CM/ECF docketing system.

[presumably meaning his version of events]" including a "E-911 receipt," text messages, bank account statements, and extra keys his ex-girlfriend allegedly had for the hotel room. (*Id.*) The receipt was allegedly for software purchased by Butler's ex-girlfriend that "can disable a target phone from reaching a 911 dispatch operator." (*Id.*)

Butler alleges that Troopers Hodgskin and Griffin laughed at him, told Butler that they would take care of his car, and stated that he "better let [his ex-girlfriend] leave or else." (*Id.*) Around this time, a fire truck approached the window with a ladder and Butler's ex-girlfriend was able to exit via the window and ladder. (*Id.*) Butler repeated his allegations "that [he] had tangible evidence to prove these crimes against [him]." (*Id.*)

Trooper Djindiev and six or seven more officers then broke down the door and "immediately bodyslammed [Butler] to the ground, bruising [his] face, ribs and arm."[6] (*Id.*) Additionally, Trooper Djindiev allegedly "stuck his knees into [Butler's] spine and repeatedly slammed [Butler's] head against the floor." (*Id.*) Butler also alleges that Trooper Djindiev took the receipt, crumpled it and put it in his pocket. (*Id.* at 12.)

Butler was taken to the police station. He asked repeatedly about his car and was told by Trooper Hodgskin not to worry and that he was going to be charged with reckless endangerment and drug paraphernalia. (*Id.*) Butler alleges that he asked Trooper Djindiev whether he would put the receipt into evidence and was told not to worry. (*Id.*) Butler was taken to the Lehigh County Jail. (*Id.*) He alleges that the affidavit of probable cause supporting the charges against him "was made up [of] lies, with material omissions and reckless false statements" except for a few sentences. (*Id.*)

---

[6] Although it is unclear, the Amended Complaint suggests that Troopers Hodgskin and Griffin were not in the room with Butler and his ex-girlfriend and were instead communicating with them from outside the room.

3

Butler wrote to various government agencies to tell his side of the story, but none responded. (*Id.* at 13.) Additionally, the criminal case against him proceeded, although Trooper Djindiev did not appear for a preliminary hearing. (*Id.*) Butler sought to dismiss the charges but the prosecutor, Jared Hanna, said that he should plead guilty. (*Id.*) Butler alleges that he wanted to cross examine Trooper Djindiev and tried to subpoena him, but the prosecutor claimed he did not receive the subpoenas and Trooper Djindiev did not appear at a second hearing. (*Id.*) Butler also alleges that the judge granted his request for transcripts but that he still has not received them, (*id*), even though the docket reflects that Butler's requests for transcripts were denied, *Commonwealth v. Butler*, CP-39-CR-288-2020.

The state court held a hearing, which Butler contends was deficient in various respects. (ECF No. 11 at 14.) He also alleges that that the judge presiding over his criminal case would not permit him to proceed *pro se*, even though his attorney was deficient in certain respects, and contends that he is not being treated fairly in his criminal case. (*Id.*)

Based on those factual allegations, Butler indicates that he is raising various constitutional claims, all of which appear to relate to his arrest, prosecution, and how his criminal case is being handled by the state court.[7] (*See id.* at 4.) The themes underlying his claims are that the officers who arrested him and the state court are preventing him from telling his side of the story, that

---

[7] Included in the alleged violations of Butler's rights is a retaliation claim. (ECF No. 11 at 4.) It is not clear what factual allegations support a retaliation claim and, accordingly, no such claims are plausibly pled. *See Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (explaining that, to state a retaliation claim, a plaintiff must allege that: "(1) he was engaged in constitutionally protected conduct, (2) 'he suffered some adverse action at the hands of . . . officials,' and (3) 'his constitutionally protected conduct was a substantial or motivating factor in the decision' to take that action."). Accordingly, any retaliation claim will be dismissed. Additionally, Butler's allegation of verbal threats, (ECF No. 11 at 6), do not state a plausible constitutional claim. *See, e.g.*, *Fanti v. Weinstock*, No. 14-4614, 2015 WL 5915962 (3d Cir. Oct. 9, 2015) ("Even severe verbal harassment typically does not rise to the level of a constitutional violation.").

4

they are covering up evidence that would support his defense, and that they are fabricating evidence against him. (*See id.* at 4-8.) Butler seeks damages in the amount of $2 million, plus punitive damages. (*Id.* at 10.)

## II. STANDARD OF REVIEW

As Butler is proceeding *in forma pauperis*, 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii) require the Court to dismiss the Amended Complaint if it frivolous or fails to state a claim. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and factually baseless "when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

To state a claim, a pleading must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory statements and naked assertions will not suffice. *Id.* As noted, the Court may also take judicial notice of matters of public record, including dockets in Butler's criminal case. *See Buck*, 452 F.3d at 260. As Butler is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . §

1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). For the following reasons, Butler's claims fail.

A. **Official Capacity Claims**

As previously explained to Butler, (*see* ECF No. 9 at 11 n.7), the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). The Commonwealth of Pennsylvania has expressly withheld consent and has not waived its Eleventh Amendment immunity. *See* 42 Pa. Cons. Stat. § 8521-22. Accordingly, the Court must dismiss Butler's damages claims against Trooper Djindiev, Hodgskin, and Griffin in their official capacities because those are really claims against the Pennsylvania State Police that are barred by the Eleventh Amendment. *See Atkin v. Johnson*, 432 F. App'x 47, 48 (3d Cir. 2011) (per curiam) ("The District Court correctly determined that the Eleventh Amendment bars claims for damages against the PSP, a state agency that did not waive its sovereign immunity.").

Butler has also failed to allege a basis for a claim against Assistant District Attorney Hanna in his official capacity. Those claims are essentially claims against the Lehigh County District Attorney's Office. *See Fitzgerald v. Martin*, Civ. A. No. 16-3377, 2017 WL 3310676, at *6 (E.D. Pa. Aug. 3, 2017). As previously explained to Butler, to state a claim against a municipal employee in his official capacity, a plaintiff must allege a municipal policy or custom caused the claimed constitutional violation. (ECF No. 9 at 12 n.9.); *See Monell v. Dep't of Soc.*

6

*Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Butler has not done so here, so the Court will dismiss this official capacity claim.

      **B.    Claims Against Assistant District Attorney Hanna**

Butler's claims against Assistant District Attorney Hanna in his individual capacity are barred by absolute prosecutorial immunity. Prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). "[W]hether a prosecutor is entitled to absolute immunity depends on whether she establishes that she was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation." *Yarris v. Cty. of Delaware*, 465 F.3d 129, 136 (3d Cir. 2006). "[T]he period during which prosecutors are most likely functioning in a 'quasi-judicial' capacity is the time between indictment and dismissal, acquittal, or conviction." *Odd v. Malone*, 538 F.3d 202, 211 (3d Cir. 2008) (footnote omitted).

Here, it is apparent that Butler's claims against Hanna are based on acts he took or failed to take in his capacity as the prosecutor presenting the Commonwealth's case against Butler. Accordingly, Hanna is entitled to absolute immunity from Butler's claims.

      **C.    Claims Against Troopers Djindiev, Hodgskin and Griffin**

Butler's claims against Troopers Djindiev, Hodgskin and Griffin are best understood as Fourth Amendment claims for false arrest, false imprisonment, and malicious prosecution. Butler also raises due process claims for fabrication of evidence.[8]

---

[8] Butler claims various deficiencies in the criminal proceeding against him based on the manner in which the state court and prosecution are handling his case. But it is unclear how any of those alleged deficiencies in process could be attributable to the Troopers. Accordingly, to the extent Butler intended to pursue claims against the Troopers apart from those discussed above, the claims are dismissed as implausible.

Unfortunately, the Amended Complaint does not make clear which of these Troopers was responsible for arresting Butler, fabricating the affidavit, and filing charges against Butler (presumably based on the false affidavit). This makes it difficult to evaluate Butler's claims because it is difficult to discern how each Defendant is personally involved in the alleged violation of Butler's rights. *See Rode*, 845 F.2d at 1207. Trooper Hodgskin is listed as the arresting officer on the criminal docket for Butler's case, *see Commonwealth v. Butler*, CP-39-CR-0000288-2020, but the Amended Complaint only recounts what Hodgskin said to Butler, and it is not clear what role, if any, Trooper Griffin played in Butler's arrest and prosecution beyond being present at the scene of the underlying incident and talking to Butler.

Butler's allegations are also unclear as to the circumstances of his arrest and prosecution. To state a claim for false arrest and related false imprisonment under the Fourth Amendment, a plaintiff must allege facts establishing that he was arrested without probable cause. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483. A plaintiff asserting a malicious prosecution claim must establish that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *See McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009). Additionally, a criminal defendant who has not been convicted "may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence,

the defendant would not have been criminally charged." *Black v. Montgomery Cty.*, 835 F.3d 358, 371 (3d Cir. 2016).

Because Butler's allegations are not clearly pled, he has not alleged that he was arrested or prosecuted without probable cause. The Amended Complaint indicates that Butler has a different understanding than the Troopers and prosecutor of what occurred during the incident that led to his arrest, but he does not describe the events with sufficient clarity to support a plausible false arrest, false imprisonment, or malicious prosecution claim to which the Defendants could meaningfully respond. He refers to pieces of evidence that he presumably believes support his defense or theory of the case, in particular, the receipt for "911-E block" allegedly taken by Trooper Djindiev, but he does not make clear in the Amended Complaint why those items establish that he was wrongfully arrested or charged. He also claims that the affidavit supporting his prosecution contained material omissions and false statements, (ECF No. 11 at 12), but he does not clarify what those omissions or statements are.

Accordingly, the Amended Complaint does not allege a plausible false arrest, false imprisonment, or malicious prosecution claim as pled. *See Godfrey v. Pennsylvania*, 525 F. App'x 78, 80 (3d Cir. 2013) (per curiam) (explaining that, to the extent plaintiff was asserting claims for false arrest and imprisonment, "[plaintiff] needed to point to facts suggesting that Defendant Thompson lacked probable cause to believe he had committed the offense for which he was arrested"). Furthermore, the charges have not, at this point, terminated in Butler's favor, so any malicious prosecution claim is premature. Nor has Butler alleged a plausible basis for a fabricated evidence claim. *See Black*, 835 F.3d at 372 ("[T]here is a notable bar for evidence to be considered 'fabricated.'").

As Butler is representing himself, the Court will give him one more opportunity to amend his claims based on his arrest and prosecution. However, under the abstention doctrine of

*Younger v. Harris*, 401 U.S. 37 (1971), the Court must abstain from adjudicating challenges to certain state criminal proceedings. Absent extraordinary circumstances not present here, *Younger* abstention applies when: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Lazaridis v. Wehmer*, 591 F.3d 666, 671 (3d Cir. 2010) (quoting *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005)). *Younger* abstention is "premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system." *Evans v. C.C.P., Delaware Cty, Pa.*, 959 F.2d 1227, 1234 (3d Cir. 1992). Indeed, the Supreme Court has recognized that "[i]f a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 393–94 (2007). Thus, even if Butler can allege a plausible basis for a claim against the Troopers in connection with his arrest and/or prosecution, the Court will likely stay this case until the criminal proceedings proceeding against Butler in state court have resolved.[9]

---

[9] As a final matter, the Amended Complaint alleges that Trooper Djindiev used force on Butler when apprehending him. To state an excessive force claim, a plaintiff must allege that the defendant's use of force was unreasonable to state such a claim, *see Estate of Smith v. Marasco*, 430 F.3d 140, 148 (3d Cir. 2005), although "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotations and citation omitted). Here, because of how the Amended Complaint is pled, it is not clear to the Court whether Butler intended to bring an excessive force claim against Trooper Djindiev. The entire focus of Butler's pleading, including his lengthy recitation of constitutional rights allegedly infringed, does not discuss excessive force. (*See* ECF No. 11 at 4.) Rather than address a claim it is not clear Butler intends to pursue, the Court merely notes the issue here so that Butler may pursue the claim in any second amended complaint if he chooses to do so.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Butler's Amended Complaint. Butler is given leave to file a second amended complaint against Troopers Hodgkin, Griffin, and Djindiev in their individual capacities in the event he can cure the defects in the claims discussed in § III.C. of this Memorandum. Butler's remaining claims are dismissed with prejudice.

An Order follows that provides further instruction as to amendment.

**BY THE COURT:**

**/s/ Juan R. Sánchez**
**JUAN R. SÁNCHEZ, C.J.**